| | |
|---|---|
| VINCENT P. LAROBINA<br>                Plaintiff<br>V.<br><br>COMMISSIONER OF TRANSPORTATION<br>STATE OF CONNECTICUT;<br><br>AQUARION WATER COMPANY; and<br><br>CITY ENGINEER, CITY OF STAMFORD<br><br>                Defendants | *<br>*<br>*<br>*<br>*  CASE NO: 3:03CV 217 GLG<br>*<br>*<br>*<br>*<br>*<br>*<br>*  MAY 10, 2004 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF LAW: RE:
## MANDATORY INJUNCTION AGAINST DEFENDANT AQUARION

### MANDATORY INJUNCTION :LEGAL STANDARD

In this circuit the standard for injunctive relief is well established. To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000). Where the moving party seeks a mandatory injunction, i.e., injunctive relief which changes the parties' positions rather than maintains the status quo, or the injunction requested "will provide substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," the moving party must make a stronger showing of entitlement. Brewer, 212 F.3d at 744 (internal quotation marks and citation omitted). A mandatory injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested" or where "extreme or very serious damage will result from a denial of preliminary relief." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985) as quoted in Taylor v. Rowland, No. 3:02cv229 (D. Conn. 02/02/2004)

Thus in order to make his case against Aquarion, the plaintiff must show: (1). Irreparable harm; (2) a likelihood of success on the merits; or a balance of hardship in plaintiff's favor; (3) a clear showing that plaintiff is entitled to the relief in question -or

1

extreme damage will result from a denial.

I. **IRREPARABLE HARM**:

DEFINITION: An injury that cannot be adequately measured or compensated by money and is therefore often considered remedial by injunction. "The term "irreparable injury", however, is not to be taken in its strict literal sense. The rule does not require that the threatened injury should be one not physically capable of being repaired. If the threshold injury would be substantial and serious- one not easily to be estimated, or repaired by money- and if the loss or inconvenience to the plaintiff if the injunction should be refused (his title proving good) would be much greater than any which can be suffered by the defendant through the granting of the injunction, although his ultimate title prevails the case is one of such probable great or "irreparable" damage as will justify a preliminary injunction." Elias Merwin, Principles of Equity and Equity Pleading 426-27 (H.C. Mervwin, er., 1896) Black's Law Dictionary Seventh Edition.

What then, is the plaintiff's "threshold injury" and how can it be estimated by repair or money? The threshold injury is that the plaintiff has been rendered an "outlaw" by Aquarion's unlawful detention of plaintiff's property, acquiesced to by the City and State.

**OUTLAW**: (1) To derive someone of the benefit and protection of law. Black's Law Dictionary, 7th Edition.

One need not be a legal scholar to understand the basic principles of Constitutional government inculcated into every child in elementary school civics class. As general principle, every citizen in a nation of laws pledges his allegiance and obedience to the Sovereign to abide by and obey the laws and edicts of the government, and in Consideration of such obedience, the Sovereign is obligated to protect, and not abridge, that citizens' rights as set down in the State and Federal Constitutions. Relative to this action, the 14th Amendment of the Federal Constitution and Article 1st Sec. 8 of

Connecticut's Constitution assert the identical basic tenet: the State shall not deprive any person of life, liberty or property without due process of law.

In this action, Aquarion, under the color of State law, supported by the continuing use of the police power of the City and State, continues to unlawfully deprive plaintiff of his property. The plaintiff is without lawful remedy. The plaintiff can't call the police and secure his property rights by having the hydrant removed; plaintiff's petitions to both State and Federal Courts have thus far been unavailing in regaining his property; the City of Stamford's Office of Legal Affairs despite due demand has refused to aid the plaintiff in securing his property. Deprived of his Constitutional rights, the plaintiff is by definition an outlaw. There can be no greater harm to an individual in a nation of laws.

As an outlaw, what recourse is available to the plaintiff to protect his life, liberty and property interests? Does he take a sledgehammer to the fire hydrant (under common law, a perfectly acceptable reaction); threaten the use of physical violence against those who deprive him of those inalienable rights granted him not by Government, but by his Creator; does he resort to those rights purportedly accorded him by the Connecticut Constitution Article 1st Sec 2- (All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit; and they have at all times an undeniable and indefeasible right to alter their form of government in such manner as they may think expedient), and thereby, incite a revolt against the government that has breached its obligation under this social contract. Frankly, none of these are viable to this particular plaintiff, who has too much respect for the concept of "Law" to ever defy the law in order to arbitrarily enforce it on his own authority. How then can such a circumstance

of uncertainty not meet the even the lowest standard of irreparable harm? Certainly, no quantity of money can recompense a citizen who ultimately realizes that he is no longer secure in his home, his property or his rights- for if plaintiff's property rights are rendered meaningless by the State, what then can be value or meaning of "money" in a State that manifests such indifference to the Rule of Law?

In addition to the arguments above, irreparable harm is further demonstrated by case law that supports plaintiff's contention that he will ultimately be held liable for damages as a consequence of any mishap occasioned by the fire hydrant placed on his private property.

In Angelillo v. City of Meriden 16 Conn. Sup (1949), the area around a fire hydrant had become deteriorated, resulting in a rut where Angelilo tripped and sustained injury. The City argued contributory negligence.

> The defendant relies upon the long familiarity of the plaintiff with the neighborhood as showing that he was guilty of contributory negligence. He lived nearby and for several years had worked in a factory situated behind the area in question. Upon the stand he admitted long-standing knowledge of existence of the dirt area around the hydrant but denied that he had seen the depression that caused his fall.

Although the Court did not credit the defense, it nonetheless raises the question of what liability this plaintiff might be exposed to if an accident occurs on plaintiff's property as a direct result of the placement of the fire hydrant; and what obligations the plaintiff might be implicitly assumed to possess relative to the maintenance of the fire hydrant, and the immediate surrounding area. For instance City Ordinance Sec. 127-4 states:

> No person shall obstruct any fire hydrant in the city by piling building or other material within ten (10) feet thereof or by parking any motor vehicle with ten (10) feet thereof or by hitching and horse or other animal to any such hydrant or to any object within ten (10) feet of such hydrant; and

4

Sec.214-16 - Ice and snow to be removed. The owner, occupant or person or condominium association in charge of any land in the city which is in front of, along or adjoining any sidewalk shall, after the ceasing of snow fall or ice on such sidewalk and after the freezing of any water or moisture thereon, remove or cause to be removed such snow or ice from such sidewalk, and if the whole cannot be wholly removed, shall sprinkle or cause to be sprinkled thereon sand or other proper substance so that such sidewalk shall be safe for public travel.

Based on the foregoing then, if the plaintiff's lawn were to develop a rut of the nature of Angelillo, or where snow or ice were to accumulate during a blizzard so as to obstruct or impede the fire department's access to its hydrant, or if some child were to attempt to "leapfrog" or balance himself unsuccessfully on the fire hydrant resulting in his crashing into plaintiff's picket fence- assuredly, the plaintiff will become embroiled in a legal controversy sounding in negligence for his failure to have caused the removal of the hydrant, or the fence, and/or somehow secured the safety of his property.

And if any accident were to occur as posited, which accident might result in substantial injury or death, what would be the plaintiff's liability then- the hydrant located on plaintiff's property? Here, the defendants will argue the plaintiff has no liability at all under the circumstances of this case- Aquarion, the State and the City would be liability. But the reality is far less certain. One can rest assured, if such an accident were to eventuate, these defendants would use any and all superior means at their disposal to wrest themselves from liability- where the weakest link, the plaintiff, would likely answer in damages for the accident occurring on his property. Under such a circumstance of uncertainty, how is the plaintiff not irreparably harmed by the continued presence of the fire hydrant on his lawn?

Certainly, the defendants will argue that the chance of such an accident is remote. Perhaps, but such an argument is not supported by case history.

5

In **Spears v. Garcia**, 263 Conn, 22, 22 (2003), the plaintiff sought to recover for injuries sustained when she was struck by a motor vehicle after she had been pushed into the road by "a high pressure stream of water from an illegally opened fire hydrant".

In **Gomes v. Commercial Union** 258 Conn 603, 604 (2001), the Court addressed an issue of third party negligence by citing Restatement 2nd §326; "A prevents the fire department from using a fire plug in front of A's premises for the purpose of putting out a fire in B's house. This A does under an unfounded claim that he is entitled to the entire supply of water from the plug. In consequence, the fire department is unable to put out the fire and B, while carefully attempting to rescue from his house some valuable chattels, is injured. A is subject to liability to B."  [Please read, if plaintiff by some unintended act hinders the fire department from the use of the fire hydrant on his property, plaintiff is liable.].

In **State v. Sitkiewicz,** 64 Conn. App. 108, 109 (2001)- "At approximately 2 A.M.....the defendant and victim....were traveling home in the victim's car after an even at Mister Happy's Bar...As the vehicle approached a curve...at a relatively high rate of speed, it veered out of control and crashed into a fire hydrant, flipped end over end and rolled over several times in the parking lot ....sustaining heavy damage".

In **Williams v. New Haven** 243 Conn 763, 764 (1998)- "On July 8, 1991, James Williams was crossing Orchard Street when a stream of water from the open hydrant caused him to fall and hit his face on the pavement. As of that date, the defendant had not placed a locking or anti-vandalism device on the hydrant".

Notably, and ironically, in the case of **Aquarion v Taylor**, (attached),Aquarion

6

sought third party indemnification for damage done relative to a fire hydrant, which hydrant Aquarion was under contract with the City of Bridgeport to repair and maintain.

Aquarion argued: " Pursuant to the tariff, "[h]ydrants owned by the municipality [in this case Bridgeport] will be repaired by the Company [BHC] at the municipality's [Bridgeport's] expense upon written order from the appropriate municipal authority." (Defendants' Motion for Summary Judgment, docket entry number 115, exhibit B, p. 29, ¶ 4a.) Additionally, **"[t]he Company [BHC] shall not be liable for any damage to person or property, sustained as a result of any break, failure or accident in or to its system or any part thereof, which is not due to the Company's [BHC] negligence, or which, being known to the customer was not reported by him in time to avoid such damage."** (Def, Motion for Summary Judgment, 115, exhibit B, P. 31, ¶ 2." (Emphasis added)

Beyond the foregoing, there is also the issue of conceivable abandonment- which is to say at what point does the fire hydrant become, or did it become, plaintiff's property? And if so, what obligation and duty if any, does the plaintiff have to the maintenance of the hydrant and the surrounding area.

"To constitute an abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such an intention is manifested." Id., 233. Most of the cases, including that cited, concern the abandonment of property rights, but personal property may also be abandoned. Haslem v. Lockwood, Page 708 37 Conn. 500, 507. This is so when its possession is voluntarily forsaken by the owner. Crossen v. Lion Oil & Refining as quoted in **SHARKIEWICZ v. LEPONE**, *139 Conn. 706, 707* (1949)

At what point, having left the hydrant on plaintiff's private property for years, does the property cease to be the City's property, and by law, become the property owner's burden?

Finally, there is the question of the indisputable illegality of this venture and its continuing nature. Both District and State Courts have found such conduct worthy as prima facie evidence of irreparable harm sufficient to qualify for mandatory injunction relief.

Injunctive relief requires no adequate remedy at law and irreparable harm absent relief. N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989). Harm of a continuing nature can justify a permanent injunction. Id. Moreover, continuing nuisances, such as the production of noises to the detriment of neighbors, may be grounds

for a permanent injunction, even if there is some basis for calculating pecuniary damages in relation to the nuisance. Tomasso Bros. v. Oct. Twenty-Four, 230 Conn. 641, 649 (1994). The contamination of plaintiffs' property could be considered a continuing nuisance that would justify a permanent injunction. Therefore, there is a material issue of fact that precludes summary judgment barring Martin from seeking injunctive relief. **Martin v. Shell Oil Co.**, No. 3-99-CV-1428 (D. Conn. 01/10/2002)

Or, **Marquardt and Roche/Meditz and Hackett, Inc. v. Riverbend Executive Center, Inc.**, 74 Conn.App. 412, 812 A.2d 175 (Conn.App. 01/07/2003):

The defendant claims that "no evidence of any harm, much less actual harm, was presented at trial ...." We disagree. The court had before it ample evidence in the form of testimony and photographs from which the court could determine that the defendant removed the plaintiff's signs and repainted the three curbside spaces for the defendant's own use. The defendant took these actions without any notice to the plaintiff and without the plaintiff's consent even though it took such action within the area which the lease designated for the plaintiff's exclusive use. **We conclude in light of the record that the court properly found that "[a] leasehold was taken away from the plaintiff and ... that is sufficient to constitute irreparable harm."** ....we conclude that the plaintiff carried its burden of proving irreparable harm, and, therefore, that the court did not abuse its discretion in granting the injunctive relief requested.

The court's injunction required the defendant to return the plaintiff's parking area to the condition it was in prior to the defendant's wrongful acts. **"It would be contrary to equity and fairness to allow a defendant to retain a benefit at the expense of the plaintiff.**" United Coastal Industries, Inc. v. Clearheart Construction Co., 71 Conn. App. 506, 513, 802 A.2d 901 (2002). Where the benefit taken by the defendant was the plaintiff's lease rights to park on certain property, the plaintiff had a right to have that property returned to its use, the defendant's motive and intent notwithstanding.(Emphasis added)

WHEREFORE, for all the reasons stated above, including the defendant's undisputed unlawful occupation, the uncertainty of plaintiff's actual and potential damage, the potential for a physical injury for which money cannot provide adequate recompense- the plaintiff believes that irreparable harm exists in this matter.

II. **SUCCESS ON THE MATTER- 42- §1983**

"In addition to § 1983's "under color of law" requirement, claims brought pursuant to the Fourteenth Amendment require a demonstration of "state action." "The State Action Doctrine refers to the constitutional guarantee under Section One of the Fourteenth Amendment that no State shall deprive any person of 'life, liberty, or property, without due process of law,' nor deny to any person 'equal protection of the law,' and requires that the wrongful conduct of private individuals have some connection to state authority to be actionable under the Fourteenth Amendment." United States v. Nelson, 277 F.3d 164, 175 fn.9 (2d Cir. 2002) (citations and internal quotation marks omitted) (emphasis added). The purpose of the "state action" requirement is to "preserv[e] an area of individual freedom by limiting the reach of federal law and avoi[d] the imposition of responsibility on the State for conduct that it could not control, but also to assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Brentwood, 531 U.S. at 295. The Second Circuit has held that "the 'under color of law' requirement has consistently been viewed in the same manner as the 'state action requirement' under the Fourteenth Amendment." **Annunziato v. Gan, Inc.**, 744 F.2d 244, 249 (2d Cir. 1984)

The nature of Count Two against Aquarion asserts a violation of 42 §1983. To sustain such a claim, the plaintiff must prove that Aquarion acted under the color of State law, and in doing so deprived plaintiff of a protected right. Clearly, this standard has been met. The letter from the Mayor of Stamford to Mr. Fritz Jacques of Aquarion affirms that Aquarion was acting under State law and state orders (**Motion-Exhibit A**) - and such right accorded by the State resulted in Aquarion's decision to unlawfully relocate the fire hydrant to plaintiff's private property. The plaintiff does not see where Aquarion Water has any defense in this matter as to its action under the color of State law.

The plaintiff and the State Commissioner of Transportation have sole right to the area in which the fire hydrant has been placed, and both have affirmatively stated that Aquarion has not received permission to install the hydrant in the current location of plaintiff's property. (**Motion- Exhibit B**) The hydrant itself, belongs to the City of Stamford; and here, the City has affirmatively claimed that it has wrongfully been placed on private

9

property. (**Motion- Exhibit C**). Aquarion purportedly, by its admission, acted unilaterally (**Motion -Exhibit D)**.

Accordingly, Aquarion has violated 42 U.S.C. 1983; and thus, it had no authority, and continues to have no authority, to maintain the fire hydrant on plaintiff's property.

Therefore, the plaintiff believes there is a strong likelihood that he will prevail on his cause of action in Count Two.

### III.  A CLEAR SHOWING OF ENTITLEMENT TO RELIEF

The plaintiff cannot conceive of any reason why he should be deprived of the relief in question. There is no claim that the City wishes that its hydrant remain on plaintiff's property, or that the State authorized, or condemned, the easement for such a purpose. There is no showing that Aquarion has some quasi- eminent domain authority, by which it can unilaterally condemn an individual's property. Also, as a matter of significance, there is no claim by any of the defendants that the plaintiff's private property is the sole, optimal location for the fire hydrant. Certainly, there exists an expanse of nearby public property where the hydrant can be safely situation.

### IV.  CONCLUSION

For the reasons, set forth above, the plaintiff prays the Court will grant this mandatory injunction and have Aquarion remove the fire hydrant from plaintiff's property be date certain, and at the nearest possible time.

Respectfully Submitted,

Plaintiff, Pro Se

*[signature]*

Vincent P. Larobina
113 Grove Street
Stamford, Connecticut 06901
Tel:   203-325-2004
Fax:   203-325-0066
E-Mail Box: vin-pro-se@snet.net

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, first class, on even date herewith, to the following counsel of record:

Attorney Joseph Hammer (Aquarion Water Company)Day, Berry and Howard, 1 City Place Hartford, Connecticut 06103, TEL: 860-275-0100, FAX: 860-275-0343

Attorney James Minor (City of Stamford), Office of Legal Affairs, City of Stamford, 888 Washington Boulevard, Stamford, Connecticut 06904, TEL: 203-977-4087, FAX: 203-977-5560

Attorney Andrew Graham ( Commissioner of Transportation), Office of Attorney General55 Elm Street, Hartford, Connecticut 06106, TEL: 860-808-5114, FAX: 860-808-5090

*[signature]*

Vincent P. Larobina - Pro Se
113 Grove Street
Stamford, Connecticut 06901
Tel:   203-325-2004
Fax:   203-325-0066
E-Mail Box: vin-pro-se@snet.net

AQUARION CO. v. TAYLOR, No. CV97 034 47 89 S (Jul. 28, 1999)

AQUARION COMPANY v. LARRY WAYNE TAYLOR, ET AL

*1999 Ct. Sup. 9511*

No. CV97 034 47 89 S

Superior Court

Judicial District of Fairfield at Bridgeport

July 28, 1999

**MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY #115)** MELVILLE, JUDGE. On July 11, 1997, the plaintiff, Aquarion Company, filed a two-count complaint against the defendants, Larry Wayne Taylor (Taylor) and Road Runner Trucking, Inc. The plaintiff alleges the following facts. On July 24, 1995, Taylor was operating a truck with the permission of his employer and within the scope of his employment when he struck a fire hydrant owned by the City of Bridgeport causing flooding and damage to streets, sidewalks and curbs in the City of Bridgeport. Accordingly, Bridgeport ordered the plaintiff to perform repairs. The plaintiff further alleges that it has expended significant sums of money to repair the damage caused by Taylor's collision.**[fn1]** Count one sounds in negligence and count two sounds in equitable subrogation. The defendants filed their answer and four special defenses on October 1, 1998, and the plaintiff filed a reply on November 19, 1998. On January 27, 1999, the defendants filed a motion for summary judgment as to both counts of the plaintiff's complaint.**[fn2]** Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Home Ins. Co. v. Aetna Life & Casualty Co.,* **235 Conn. 185**, 202, **663 A.2d 1001** (1995). The moving party has the burden of showing the absence of any genuine issue of CT Page 9512 material facts. *Gupta v. New Britain General Hospital,* **239 Conn. 574**, 582, **687 A.2d 111** (1996) First, the defendants move for summary judgment on the ground that the plaintiff lacks standing because it fails to assert a colorable claim of direct injury suffered. The plaintiff contends that it has standing because it has suffered a direct pecuniary loss as a result of Taylor's negligence. Standing is the legal right to set judicial machinery in motion. *Lawrence Brunoli, Inc. v. Branford,* **247 Conn. 407**, 411, **722 A.2d 271** (1999). A complaining party ordinarily can show that it is a proper party when it makes a colorable claim of a direct injury it has suffered or is likely to suffer, in an individual or representative capacity. *Community Collaborative of Bridgeport, Inc. v. Ganim,* **241 Conn. 546**, 553-54, **698 A.2d 245** (1997). A colorable claim of a pecuniary loss, regardless of its magnitude, satisfies this criterion for standing. *American-Republican, Inc. v. Waterbury,* **183 Conn. 523**, 527, **441 A.2d 23** (1981). See also, *Gay & Lesbian Law Students v. Board of Trustees,* **236 Conn. 453**, 464, **673 A.2d 484** (1996) (the amount of the injury need not be great). Furthermore, where no direct legal duty is owed to the plaintiff and the plaintiff can at best claim an *indirect* injury as a result of the defendant's alleged acts, standing also does not exist. *Paul S. Yoney v.*

*Hosoital of St. Raphael,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 271006 (July 10, 1992, *Katz, J.*) (7 C.S.C.R. 894). Where a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. *Monroe v. Horwitch,* **215 Conn. 469**, 473, **576 A.2d 1280** (1990) Here, the plaintiff has submitted the affidavit of Joseph Petrucelli, the Administrator of Utility Operations for Bridgeport Hydraulic Company (BHC), who avers that "[b]y agreement with the City, Bridgeport Hydraulic maintains, services and repairs the hydrant." (Petrucelli's Affidavit, ¶ 5). Petrucelli further averred that "[t]he total cost of repairs incurred by Bridgeport Hydraulic was in excess of $100,000. (Petrucelli's Affidavit, ¶ 6). There is apparently no pecuniary loss to the plaintiff here, however, because the plaintiff is entitled to full reimbursement from the City.[fn3] Therefore, despite Petrucelli's averments, no direct legal duty is owed to the plaintiff by Taylor and the plaintiff can at best claim an indirect injury as a result of Taylor's alleged act of hitting the hydrant. Because the plaintiff lacks standing, this court is CT Page 9513 without jurisdiction to adjudicate the merits of this case. Accordingly, this court is obliged to grant the defendants' motion for summary judgment. With regard to the second count alleging the doctrine of equitable subrogation, the defendant's argument with which this court agrees is that plaintiff's reliance on this doctrine is misplaced. The elements of a subrogation claim are: (i) a debt exists for which someone other than the subrogee is primarily liable; (ii) the subrogee discharges the debt for the protection of his own rights or interests, or at the request of the debtor or (iii) the funds of the person seeking subrogation have been wrongfully applied; or (iv) a third person receives a benefit. The fact that money is advanced to pay another's debt is not sufficient. The one seeking subrogation must be something more than a mere volunteer or intermeddler. 73 Am. Jur.2d, Subrogation § 11 (1974). The right of equitable subrogation takes place as a matter of equity, with or without an agreement to that effect. The object of equitable subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. *Westchester Fire Ins. Co. v. Allstate Ins. Co.,* **236 Conn. 362**, 371-72 (1996). Here, the defendants have attached a portion of the tariff governing BHC. (Defendants' Motion for Summary Judgment, docket entry number 115, exhibit A.) Pursuant to the tariff, "[h]ydrants owned by the municipality [in this case Bridgeport] will be repaired by the Company [BHC] at the municipality's [Bridgeport's] expense upon written order from the appropriate municipal authority." (Defendants' Motion for Summary Judgment, docket entry number 115, exhibit B, p. 29, ¶ 4a.) Additionally, "[t]he Company [BHC] shall not be liable for any damage to person or property, sustained as a result of any break, failure or accident in or to its system or any part thereof, which is not due to the Company's [BHC] negligence, or which, being known to the customer was not reported by him in time to avoid such damage." (Defendants' Motion for Summary Judgment, docket entry number 115, exhibit B, P. 31, ¶ 2.) It is undisputed that Bridgeport, pursuant to the tariff, ordered BHC to repair the damage caused by the aforementioned CT Page 9514 accident. (Complaint, Count two, ¶ 12; Defendants' Memorandum of Law, "Statement of Undisputed Material Facts", pp. 2-3.) However, no evidence has been submitted that Bridgeport ordered BHC to *pay* for the repairs. The affidavit submitted by the plaintiff only attests that the City ordered BHC's Administrator of Utility Operations to *make the repairs* and that the total cost of the repairs was in excess of $100,000. (Petrucelli's Affidavit, ¶¶ 5, 6.) In fact, pursuant to the letter from the Department of Public Facilities to the Rates & Budget Analyst of BHC, "[t]he City would make the repairs and seek compensation for the work

that had to be done to restore the area in a manner consistent with existing city policies." ((Defendants' Motion for Summary Judgment, docket entry number 115, exhibit B.) BHC was only liable to *repair* the damages, but it was Bridgeport's duty to *pay* for repairs to the hydrant. (Defendants' Motion for Summary Judgment, docket entry number 115, exhibit A.) If the plaintiff expended any monies for such repair, it acted as a volunteer. Furthermore, the plaintiff has failed to submit evidence that BHC has paid a debt for which the present defendants are primarily liable. Based on the foregoing, the defendants' motion for summary judgment is hereby *granted* as to both counts. MELVILLE, J. [fn1] The plaintiff also alleges that Bridgeport Hydraulic Company (BHC) is its principal subsidiary and is in the business of providing water service throughout southwestern Connecticut. [fn2] The defendants filed a motion for summary judgment, identical to the January 27, 1999 motion, on March 16, 1999. [fn3] Pursuant to the tariff between BHC and the City, "[h]ydrants owned by the municipality will be repaired by the Company at the municipality's expense upon written order from the appropriate municipal authority." (Defendant's Exhibit B, ¶ 4 a.)