MIOTD

VINCENT P. LAROBINA          *

           Plaintiff      *   *FILED*

V.                            *

                          Jun 17  9 38 AM '04

COMMISSIONER OF TRANSPORTATION    *   CASE NO: 3:03CV 217 EEB

STATE OF CONNECTICUT;           * U.S. DISTRICT COURT

                          * NEW HAVEN, CONN.

AQUARION WATER COMPANY; and      *

                          *

CITY ENGINEER, CITY OF STAMFORD     *

                          *

            Defendants    *     JUNE 16, 2004

**************************************************

## MEMORANDUM IN OPPOSITION TO
## <u>DISMISSAL OR STAY FILED BY AQUARION WATER COMPANY</u>

Defendant, Aquarion Water Company ("Aquarion"), has once again filed a motion with this Court requesting a further stay of this action. This motion also seeks a dismissal of the Complaint. The plaintiff has filed an Objection to the Motion (Doc.#49, 50), asserting that Aquarion does not have standing to seek a dismissal of the entire action. Additionally, in seeking another stay, Aquarion's motion constitutes an untimely pleading seeking reconsideration of prior rulings of the Court (Hon. Gerard L. Goettal, USDJ; Hon. William I. Garfinkel, USMJ) before the transferee Court (Hon. Ellen Bree Burns, USDJ). For these reasons, and others cited in plaintiff's objection, plaintiff respectfully believes that Aquarion's Motion is unwarranted and not properly before this Court.

Without waiving the objection, the plaintiff respectfully represents as follows.

## BACKGROUND FACTS

The plaintiff is owner of a multi-family home located at 111-113 Grove Street, Stamford, Connecticut.

1

On or about February 17, 1999, the Commissioner of Transportation the (State")
condemned 269 square feet of the frontage of plaintiff's property as a permanent
easement as necessary for the widening of Grove Street (the "Grove Street Project") The
plaintiff, pursuant to C.G.S13a-76, timely filed an appeal as to the State's assessment.

The Grove Street Project began in the spring 2000 and ended in the fall 2001. The
project was a joint State/City project, financed in part by Federal funds. ( Exhibit A).

In accordance with the condemnation maps, the subject easement was condemned
to facilitate the construction of the public sidewalk attendant to the newly constructed
Grove Street; i.e. a "sidewalk easement" The taking map depicts the sidewalk _outside_ the
easement. The easement was acquired merely to slope and grade plaintiff's property to
meet the lower grade of the new sidewalk occasioned by the construction.

**THE ISSUES**

Upon the completion of the Grove Street Project in or about October 2001, the
plaintiff became aware of two (2) irregularities relative to the easement:

**(1)** Although the sidewalk had been constructed outside the easement as planned,
the State had unilaterally crafted and recorded on the Stamford Land Records, without
notice to the plaintiff, the following easement description:

"A full and perpetual right to construct sidewalk **within** an area of 269 square feet,
located between and opposite Stations 19+19.65.88 right base line and present Grove
Street, as shown on said map." (Emphasis added.)

Thus, by this wording, the State had wrongfully accorded itself a substantially
enhanced future right to enter onto plaintiff's property and construct a sidewalk, not
authorized by the subject condemnation. In this circumstance, a property owner is without

2

State remedy, as the statutory scheme allows a plaintiff to Appeal the monetary assessment of a taking, but the property owner cannot contest the validity of the wrongful description. Count One of this Federal Complaint addresses this issue.[1]

(2) As to the second irregularity, at the completion of the construction, the plaintiff came to discover that a Fire Hydrant had been permanently placed within the easement in the middle of plaintiff's front lawn, again not in compliance with the design of the condemnation map. The easement was not defined as a "utility easement".

At that time, plaintiff assumed that the hydrant had been installed on plaintiff's lawn by the State pursuant to its condemnation project, and therefore (1) the plaintiff believed that he was indemnified from any liability from either the use and/or misuse of the hydrant; and, (2) that the plaintiff could claim severance damages from the State at the time of his Condemnation Appeal.

However, prior to the Appeal hearing, the plaintiff was informed by State's counsel that the State had not authorized the installation of the fire hydrant on plaintiff's property. (As documented, Exhibit B), The State claimed that the unauthorized use of the easement was caused by the action of the City of Stamford - and thus, the State was not responsible for any severance damages.

In turn, the City claimed that it had not authorized the placement of the fire hydrant

---

[1] The Condemnation Appeal has been heard. There the State argued that the easement had not resulted in the installation of a sidewalk on plaintiff's property, and therefore was "not necessary" for the project. The Court (Hon. Justice Callahan, JTR) agreed, and the plaintiff was not accorded severance damages. The Plaintiff has appealed the decision to the Appellate Court based on the plaintiff's view that if the taking was "not necessary", the Commissioner had no right under eminent domain to condemn it- or alternatively, since the property was taken, The Court had to assess severance damages as if the sidewalk **had** been placed in the easement.

3

on plaintiff's property. (Documented, Exhibit C). The City claimed that Aquarion Water Company, on its own authority, installed the fire hydrant on plaintiff's property. Based on these conflicting statements, the litigation in state and federal court commenced.

## THE STATE ACTION

In August 2002, plaintiff filed a verified Complaint in Superior Court for the purpose of determining with finality which party was responsible for the unlawful placement of the hydrant, and ultimately, seeking its removal.

At the injunction hearing on January 6, 2003, the State, City and Aquarion (the "defendants"), all opposed the mandatory injunction. However, Aquarion, through a mid-level project coordinator, Mr. Fritz Jacques, testified that Aquarion was unilaterally responsible for the placement of the hydrant - without consultation, permits or authorization from the State, the City, and without the permission of the plaintiff. (Documented, Exhibit D)

The Court (Hon. Frank D'Andrea, J) ruled from the bench that the removal of the hydrant would impact public safety, and thus, the Court denied plaintiff's request for a mandatory injunction.

Thereafter, on January 30, 2003, the plaintiff converted his Injunction Complaint into a full civil action against the defendants, alleging:

Count 1:    Commissioner - C.G.S. §13a-73(b) was violative State Constitution Article First, Sec. 8, for the false easement description;

Count 2:    Commissioner - Violation Conn. Gen. Stat. §13a-73(b) for abuse of authority for the false easement description;

Count 3     Commissioner- Inverse condemnation under Article First, Sec.11 for the additional taking pursuant to the wrongful easement description;

4

Count 4:     Aquarion- Trespass for entering plaintiff's property without permission;

Count 5:     Aquarion - Civil theft (C.G.S..§§53a-119); for the taking of plaintiff's property;

Count 6:     Aquarion - Violation of Connecticut Unfair Trade Practices Act ("CUTPA", C.G.S. §42-110 et seq.) based on trespass and civil theft; and,

Count 7:     City Inverse Condemnation, refusal to remove its Hydrant- (Art.1st, §1).

Notably, in July 2003, the plaintiff dropped his claims against the State and the City, and added party plaintiff, Yankee Gas Company. Yankee Gas had also unlawfully placed a utility fixture on plaintiff's lawn.

Therefore, as of July 2003 through the present, Aquarion and Yankee Gas are the sole defendants to the State Action. The State and City are no longer party-defendants.

## The Federal Action

On January 31, 2003, one day after the filing of the amended Civil Complaint, the plaintiff filed this action in Federal Court. Grounded wholly in Federal law, the Federal Action evolved as a direct result of the questionable testimony of Aquarion's Mr. Jacques at the injunction hearing, and Aquarion's refusal to remove the unlawfully placed hydrant.

With all due respect, the plaintiff simply did not, and currently does not, believe that Mr. Jacques testimony is credible. That is, the plaintiff does not believe that the placement of such an important public safety fixture as a fire hydrant could be effectuated on the sole authority of a mid level water company employee - without consultation with the City, State, Fire Department or higher level Aquarion corporate officials- as testified by Mr. Jacques and affirmed by the subsequent Interrogatory replies documented in Exhibit D.

Furthermore, the testimony seems particularly implausible where, during the entirety of the construction process, State and City officials were on site monitoring the progress

5

of the Project. To think that Mr. Jacques would not have consulted with any of these officials, or that these officials would not have recognized the anomalous placement of a hydrant on a property owner's front lawn, in plaintiff's view, - defies reason.

Significantly, the plaintiff respectfully requests that this Court take note of the fact that the State and the plaintiff are the sole parties lawfully entitled to the use of the easement; and, as documented by Exhibit B, neither the State or the plaintiff have authorized the use of the easement for the purpose of the placement of any utility fixtures, a fire hydrant included.

Therefore, Exhibit B notwithstanding, where all defendants opposed the removal of the hydrant though universally recognized as installed without the permission of the owners of the easement ; and where, despite due demand, none of the defendants would accede to the removal of the hydrant; then plaintiff concluded that the defendants were engaged in a strategy to maintain the hydrant on plaintiff's property.

In furtherance of this conclusion, plaintiff respectfully does not believe that Mr. Jacques would have given Court testimony claiming to have positioned the hydrant on plaintiff's lawn based on his unilateral authority, absent consultation with others involved in this action. Therefore, plaintiff believes that Mr. Jacques testimony, if shown to be false, would amount to a contrived strategy amongst the defendants to obstruct judicial process.

As alleged in this Federal action, the conduct described violates plaintiff's federal constitutional property rights guaranteed by the 14th Amendment. Accordingly, the plaintiff properly exercised his constitutional right to bring these allegations to the most appropriate forum, District Court. Plaintiff's Federal Complaint alleges:

Count 1:     State: C.G.S. 13a-73(b) violative Federal Constitution, 14th Amendment.

6

Count 2:    Aquarion: Violation 42 U.S.C. §1983; 14th amendment.
Count 3:    Aquarion: Violation CUTPA predicated on violation 42 U.S.C. §1983.
Count 4:    City: Violation 42 U.S.C. §1983; 14th amendment.
Count 5:    All defendants: conspiracy to violate 42 U.S.C. §1983.

These allegations based on federal claims are certainly serious in nature, and will not be reached in the State action since the City and the State are not parties to the action; and these issues are not relevant to the State claims against Aquarion and Yankee Gas.

Nevertheless, in its Memorandum, Aquarion's claims that these actions "overlap" because of the "connection with the same easement and fire hydrant" (Mem. p.3); that "both revolve around the easement taken ...and the legality of the placement of the fire hydrant on the easement area" (Mem. P.4); that plaintiff's federal claims "rest upon the claim underlying the Superior Court Action and the placement of the fire hydrant on plaintiff's property is unauthorized and illegal" (Mem. P.4); "[a]judication of plaintiff's federal claims therefore requires a determination of state law issues of the scope of the easement and the propriety of the placement of the fire hydrant on the easement...all of which are the subject of and will be adjudicated in the Superior Court Action"; and, [i]f plaintiff does not establish in the Superior Court that the placement of the fire hydrant on his property as wrongful, that he cannot prevail on his claims in this action against Aquarion." (Mem. p. 7);-- all of these arguments are irrelevant reasons for this Court to dismiss or stay this action.

These claims are irrelevant because ( 1) there is no authority for the proposition that a District Court must give way to the State Court's adjudification of these issues; (2) the issues themselves are non-issues, because as documented by the Ragazzo Memorandum

7

(Exh. B) and the Toma Letter (Exh. C), the defendants themselves have already established and recognized that the fire hydrant is unlawfully placed; (3) Aquarion, as documented by the Ragazzo letter, did not have the State's permission to enter onto the easement controlled by the State to install a fire hydrant; and (4) Aquarion has no standing to contest the "scope" of the easement- the easement running in favor of the State, and State having affirmatively declared that the easement can not be used for the placement of a fire hydrant.

Furthermore, Aquarion cites case law and authorities that are wholly inapplicable to the matter before the Court. All the cases cited by Aquarion involve concurrent federal actions; not concurrent federal/state actions:

"Although duplicative litigation as between federal courts is ordinarily to be avoided, [g]enerally, as between state and federal courts, the rule is the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction...This difference in general approach between state-federal concurrent jurisdiction and wholly federal jurisdiction stems from the virtual unflagging obligation of the federal courts to exercise the jurisdiction given them. Colorado River, 424, U.S. at 817 as quoted in **Woodford v. Community Action Agency of Greene County, Inc**., 239 F.3d 517, 523 - (2d Cir. 02/16/2001)

Finally, Aquarion argues "[s]imarily, plaintiff's claim **against the City** and **his §1983 claim against the Commissioner** rest on the claims made in the Superior Court Action as to the scope of the easement and wrongful placement of the fire hydrant" (Mem. P.7- emphasis added). The City and the Commissioner are represented by very able counsel, who, to plaintiff's knowledge, have not relinquished authority to Aquarion to represent their clients as to the Counts directed against the City and the State. Aquarion has no authority to attempt to dismiss or stay Counts that are directed against other parties to this litigation.

Based on the foregoing background of the case, plaintiff respectfully asserts that

8

this Court has jurisdiction over the federal claims pending in this matter, and is not obliged to relinquish jurisdiction of these claims based on the arguments presented by Aquarion.

Thus, based on this history of the case, plaintiff prays this Court will deny Aquarion's motion for dismissal or stay based on the pendency of concurrent state and federal actions, because the actions are not at all parallel. The effect of any such stay or dismissal would effectively put the plaintiff out of court as to these legitimate federal claims against the City and State that are not part of the State Action.


## AQUARION'S MOTION TO DISMISS- PRIOR PENDING ACTION

1.  **Purpose of Aquarion's Motion to Dismiss**

Plaintiff's claims in this action against Aquarion assert a violation of 42 U.S.C. §1983. To sustain such a claim, the plaintiff must prove that Aquarion acted under the color of State law, and in doing so, Aquarion deprived plaintiff of a protected right.

Here, Exhibit A establishes that Aquarion was acting under State law and state orders; Exhibits B and C document that the placement of a fire hydrant on plaintiff's property was recognized as unlawful and unauthorized; and Exhibit D documents that Aquarion assumed full responsibility for the unlawful placement. Notwithstanding these facts, Aquarion, despite due demand, refused to remove the hydrant until June 2004, coincident with plaintiff's filing of a mandatory injunction for its removal (Doc. #41)

Accordingly, plaintiff respectfully believes that Aquarion's purpose in filing this motion to dismiss is solely to avoid damages, where it appears to have conceded liability.

9

2.    **Jurisdictional Defects of Aquarion's Motion for Dismissal**

Aquarion does not have standing to request its claimed relief, i.e. the dismissal of this Complaint, for the following reasons:

1.    Aquarion is solely an independent party-defendant to Counts Two and Three of the Federal Complaint.  Aquarion is a co-defendant as to Count Five (conspiracy), but conceivably, the plaintiff could be accorded relief in that Count as to the State and City, and Aquarion could escape liability.

Accordingly, where Aquarion can only represent its own interests in this action, and those interests do not extend to the entire Complaint, Aquarion can not request that the entire Complaint be dismissed.

2.    The State has already filed its Answer to the Complaint, and therefore the issues as to the plaintiff and the State have been joined.  The State has not filed a Motion to Dismiss. Aquarion can not act in a representative capacity for the State, and seek to dismiss Counts that the State has answered and decided to litigate.

3.    The State and City are not parties to the State action. If Aquarion was granted its requested relief, plaintiff would be out of Court as to the federal causes of action asserted against those parties. Aquarion does not have the authority to achieve such a result through the use of this motion.

2.    **Legal Standard: Prior Pending Action-**

(A)    **State Law**
Our Supreme Court has held that the prior pending action doctrine applies when two actions are virtually alike and *pending in the same jurisdiction*. [Emphasis added.] See Cumberland Farms, Inc. vs. Groton, 247 Conn. 196, 216 (1998). As Judge Skolnick points out: It should be noted that "when one action is in a state court and the other is in the federal court sitting in the same jurisdiction . . . [n]either is

10

abatable because of the pendency of the other, except possibly when the first action is in a federal court because of removal from the state court. <u>O'Connor v. Wethersfield</u> 2003 Ct. Supp. 7210, 34 CLR 621 (Attached)

(B)    **<u>Federal Law</u>**

Next, the defendants argue that this action should be dismissed due to the presence of a prior pending action in the New York Supreme Court. The defendants' argument ignores the well-established federal rule that the "pendency of an action in state court is no bar tó proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water . v. United Sates, 424 U.S. 800, 817 (1976)(internal citations omitted). ; United States v. Zemsky, 821 F.2d 148, 152 (2d Cir. 1987). Although the Supreme Court recognizes that "exceptional" circumstances may "permit[] the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration," Colorado River, 424 U.S. at 818, those circumstances are not present in this case." <u>National Council. v. Caro & Graifman, P.C.</u>, No. 3:00cv01925 (AHN) (D.Conn. 03/31/2003).

Aquarion's reliance on the prior pending action doctrine is misplaced under the circumstances of this case. District Courts will dismiss identical actions pending in Federal Court as happened in the case cited by Aquarion, <u>Odesina v. St Francis Hospital</u> 3:01CV1091-PCD - ("This conclusion is premised on the sound principle that "plaintiffs have no right to maintain two actions on the same subject in the **same court**, against the same defendant at the same time." *Curtis*, 226 F.3d at 139- emphasis added). Both in State and Federal Courts the underlying principle of "prior pending actions" are that the actions exist in the same jurisdiction. That is not the case here.

Without question, a District Court possesses the authority and discretion to dismiss or stay a federal action where a concurrent parallel action is pending in State Court. But, the authority for such a decision comes from the abstention doctrine articulated in Colorado River. Therefore, in citing the doctrine of prior pending action in its motion as the sole authority for dismissal, Aquarion has not presented to this Court a proper basis or authority upon which to obtain the dismissal of this action.

11

## AQUARION'S MOTION TO DISMISS/STAY- COLORADO RIVER

1.   **Background :  Prior Stays**

On April 2, 2003, Aquarion, joined by the State and the City, moved this Court for

a Stay of Proceedings and a Referral To Judge Magistrate (Pleadings #17 and 18). The

basis for the request was identical to the claim presented to this Court in the current

motion; i.e. that a stay was warranted because of the concurrent State action.  In that

Motion, the defendants requested the following relief:

> "Adjudication of the state court actions may make this action moot.  In the
> meantime, defendants submit that it would be an inefficient use of this Court's resources
> to allow plaintiff to litigate simultaneously two state court actions and a federal court action.
> A stay would also avoid the potential for conflict between the State and Superior Court.
> Finally, this action involves a number of underlying claims based on the state law which
> have also been asserted in the State Court Action.
>
> Undersigned defendants also request that this action be assigned to a Judge
> Magistrate for the purposes of a conference at which the parties would have an opportunity
> to discuss the ripeness of this action, the potential for settlement, and, if a resolution is not
> possible, whether this action should remain stayed pending resolution of the State Court
> Action" (Defendant's Memorandum, Pleading #18, pp.4-5)

The plaintiff opposed the Motion based on the fact that the actions in question were

not parallel, and to the extent the Court might consider them so, the actions did reach the

level of "exceptional circumstances" under the criteria of Colorado River. (Pleading # 20).

In response, on June 25, 2003, the Court (Hon. Gerard L. Goettel, USDJ) issued

a very targeted order: " Motion granted to the limited extent of referring the case to

Magistrate Judge William I. Garfinkel for possible settlement."

Plaintiff interprets Judge Goettel's order as meaning that the Court deemed it

reasonable to stay the action for the possibility of settlement, but rejected defendants'

claim that the District Court should abstain from maintaining jurisdiction of the federal

12

action- or- that the District Court should relinquish its jurisdiction to a Judge Magistrate for any other reason but the purpose of settlement.

Starting from June 25, 2003, the record documents that the defendants did not take advantage of the settlement opportunity afforded them by Judge Goettel. Accordingly, plaintiff filed a Motion to Lift the Stay dated October 24, 2003 (Pleading #24) due to the alleged recalcitrance of the defendants who had made no effort to follow through in settlement discussions.

Thereafter, Judge Garfinkel convened a conference of all parties on January 22, 2004, where the Court determined that sufficient progress had been evinced at the conference in order to continue settlement discussions. Therefore, Judge Garfinkel denied plaintiff's Motion to Lift the Stay, and ordered a further stay in the action until "June 4, 2004 or until further order of this Court" The plaintiff, in deference to the Court's judgment that progress had been made towards resolution, did not object to the continuance of the Stay.

However, in the months to follow, the defendants again delayed resolution. Plaintiff advised Judge Garfinkel that the defendants were not returning his phone calls or responding to his e-mails. Specifically, the plaintiff complained that the Aquarion had not complied with the Court's Stay Order when it did not conduct a telephonic conference between the parties in March 2004, as ordered. Where the Court's order made provision that "any party may move to lift the stay for good cause" , the plaintiff re-issued a motion to lift the stay on April 5, 2004 for cause.

Aquarion opposed the motion, but after a telephonic conference between Judge Garfinkel and the parties on April 5, 2004, Judge Garfinkel granted plaintiff's motion to lift the stay on April 8, 2004 (Endorsement #36.)

13

At this point, this action was returned to pleading status, whereupon, Aquarion requested an extension of time to file a responsive pleading, and subsequently, on May 28, 2004, Aquarion filed the subject motion for dismissal or further stay.

1.    **The Law of the Case**

The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment. However, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir.), cert. denied, 377 U.S. 934, 12 L. Ed. 2d 298, 84 S. Ct. 1338 (1964).

As cited above Aquarion first unsuccessfully moved for a permanent stay in this action before Judge Goettel for the same reasons presented here. Subsequently, Aquarion successfully opposed plaintiff's initial request for lifting of the Stay before Judge Garfinkel for settlement purposes; but thereafter, Judge Garfinkel granted plaintiff's motion to lift the stay, presumably upon plaintiff's showing of good cause.

Thus, one way or another, this case has been stayed for settlement purposes for a year- and to no successful purpose. The plaintiff posits that the reason the matter defied resolution was because, although the defendants have a unity of interests against their common rival plaintiff, they share any uneasy alliance as to liability amongst themselves. This fact is evidenced by Exhibits B and C, where the State blames the City for the positioning of the hydrant, and vice versa. Thus, based on the questionable testimony of Mr. Jacques, the defendants are placed in a position of disharmony where they cannot reach a collective agreement as to their individual liability- and the plaintiff is powerless to undo that dynamic.

Since the plaintiff believes this to be the case, the plaintiff respectfully asserts that

14

plaintiff should not be prejudiced by the continuation of a stay which prevents him from seeking judgment in this action. Beyond this, where Aquarion has no apparent defense to the claims asserted, Aquarion's current motion is more a pleading of last resort than a reasoned petition for a stay based on recognized principles of federal court abstention.

Respectfully, what is current before this Court is Aquarion's untimely motion to reconsider Judge Goettel's order denying a permanent stay based on abstention principles; and, an untimely motion to reconsider Judge Garfinkel's order to lift the stay. Plaintiff prays the Court will not grant such reconsideration.

2.   **COLORADO RIVER ABSTENTION DOCTRINE**

Finally, should this Court reach the issue, the plaintiff addresses Colorado River.

A.   **LEGAL STANDARD**

The abstention doctrine comprises a few "extraordinary and narrow exception[s]" to a federal court's duty to exercise its jurisdiction. Colorado River, 424 U.S. at 813 (internal quotation marks omitted); see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 14-16, 25-26 (1983) ("Moses Cone"). Although duplicative litigation as between federal courts is ordinarily to be avoided, [g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . . This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Colorado River, 424 U.S. at 817 (internal quotation marks omitted).

Under the Colorado River exception the court may abstain in order to conserve federal judicial resources only in "exceptional circumstances," where the resolution of existing concurrent state-court litigation could result in "comprehensive disposition of litigation." Id. at 813, 817 (internal quotation marks omitted).

As our Supreme Court "emphasized"- our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under Colorado River to justify the surrender of that jurisdiction. Moses Cone, 460 U.S. at 25-26 (emphases in original). **Woodford v. Community Action Agency of Greene County, Inc.**, 239 F.3d 517, 523 - (2d Cir. 02/16/2001) see also, <u>Village of Westfield v. Welch"s</u>, 170 F.3d 116 (2d Cir. 02/26/1999);

15

Gregory v. Daly, 243 F.3d 687, 243 F.3d 687 (2d Cir. 03/27/2001)

## B.   THE ACTIONS MUST BE PARALLEL

Prior to applying the abstention doctrine standard under Colorado River, the threshold issue which must be addressed is whether or not the state and federal actions in question are in fact parallel. (Ryan v. Johnson, 115 F.3rd 193, 196 (1997). Cases are considered parallel if they involve the same parties and claims, however, "we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Day v. Union Mines Inc., 862 F.2d 652, 656 (7th Cir. 1988) quoting Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 695 (7th Cir. 1985); also cited AAR International, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510 (7th Cir. 04/27/2001) As quoted in Woodford above, courts may abstain from jurisdiction under the Colorado River only in exceptional circumstances- "where the resolution of existing concurrent state-court litigation could result in comprehensive disposition of litigation."

The State and Federal Actions at issue are not parallel; any State decision will not comprehensively dispose of the federal litigation. The action before this Court is not based upon diversity, but rather, upon federal questions. The federal questions do not form any part of the State Action. The State and City are not a part of the State Action. The claims against the State and the City will not be resolved by the State action. Furthermore, in the Federal action, this Court must make a determination as to whether or not the defendants acted under the color of State law, that issue is not present in the State action.

Additionally, Count Five of the Federal Complaint is, in effect, an alternative Count

16

which will rise or fall on this Court's decision as to whether or not Mr. Jacques testimony was truthful. That issue is not before the State Court. Essentially, the Counts against Aquarion in the State action accept Aquarion's testimony and interrogatory replies as true; Count Five of the Federal Complaint does not accept those representations as true.

Consequently, the actions before the State and Federal Courts do not satisfy the requisite similarity by which a District Court might stay or dismiss the Federal Action.

## 3.    APPLICATION OF COLORADO RIVER CRITERIA

Alternatively, if this Court were to conclude that these actions were parallel, the Court would then have to determine whether or not the concurrent actions fell within the scope of the  six (6) criteria that govern the Colorado River exception:

> [T]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements. In determining whether to abstain under Colorado River, a district court should consider:(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal actions will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.
> [T]he balance [is] heavily weighted in favor of the exercise of jurisdiction," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983), and "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it," (internal citations and quotation marks omitted). **General Star Insurance Indemnity, Ltd. v. Chase Manhattan Bank**, No. 02-7659(L) (2d Cir. 02/07/2003)

As to these considerations, addressed respectively, (1) the controversy does not involve a res where one court has assumed jurisdiction; (2) both forums are equally convenient; (3) piecemeal litigation will not occur since the causes of action are separate and distinct as to the jurisdictional issues and the parties are different. Certain facts may

17

be similar, but the facts weighed against the respective claims in each action have no concurrent effect; (4) the State Amended Complaint preceded the Federal Action by a day, but notwithstanding that the State action has never been stayed, the State pleadings still are not closed. In fact, the last two (2) motions in the State action have been marked "off", due to the "unavailability of the file". Therefore, in all likelihood, if this Federal action is not stayed, it will reach a resolution prior to the State action; (5) questions of federal law reside solely in the federal action; and (6) since federal law is not raised in the State Action, only the Federal Action can safeguard the plaintiff's federal rights.

Accordingly, even if the Court does find that the actions are parallel, the plaintiff respectfully believes that the Court should deny the stay of proceedings because abstention would not meet customary requirements as set down in Colorado River.

WHEREFORE, the plaintiff respectfully opposes Aquarion's motion for a dismissal or stay, and prays the Court will deny the requested relief.

Respectfully Submitted,
Plaintiff, Pro Se

Vincent P. Larobina
113 Grove Street
Stamford, Connecticut 06901
Tel:   203-325-2004
Fax:   203-325-0066

18

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, first class, on even date herewith, to the following counsel of record:

Attorney Joseph Hammer (Aquarion Water Company)Day, Berry and Howard, 1 City Place Hartford, Connecticut 06103, TEL: 860-275-0100, FAX: 860-275-0343

Attorney James Minor (City of Stamford), Office of Legal Affairs, City of Stamford, 888 Washington Boulevard, Stamford, Connecticut 06904, TEL: 203-977-4087, FAX: 203-977-5560

Attorney Andrew Graham ( Commissioner of Transportation), Office of Attorney General 55 Elm Street, Hartford, Connecticut 06106, TEL: 860-808-5114, FAX: 860-808-5090

Vincent P. Larobina