VINCENT P. LAROBINA
                     Plaintiff
V.

CASE NO: 3:03CV 217 EBB

COMMISSIONER OF TRANSPORTATION
STATE OF CONNECTICUT; et al
                    Defendants

APRIL 14, 2005

*******************************************

## PLAINTIFF'S REPLY BRIEF TO DEFENDANT CITY ENGINEER'S LETTER TO PRESIDING JUDGE, THE HONORABLE ELLEN BREE BURNS

On or about March 11, 2005, the Court (Hon. Ellen Bree Burns, SUSDJ), <u>ordered all parties in this action to provide to the Court a memorandum of law</u> as to "what is property within the meaning of the Fourteenth Amendment?" on or before April 1, 2005.

On April 12, 2005, plaintiff received a copy of a facsimile of a letter addressed to presiding Judge, Hon. Ellen Bree Burns, from party defendant, City Engineer (the "City"). The letter asserts the following relevant facts:

1. That the letter dated April 12, 2005 is a late response to the above referenced Order.

2. That the City missed the April 1, 2005 Order deadline by "oversight".

3. "<u>The City does not intend to file a separate Memo of Law</u>". (Transcribed exactly)

4. The City's letter claims to serve the function of an untimely response to the Court Order by the retroactive adoption of Aquarion's timely filed Memorandum of Law.

### ARGUMENT

The plaintiff proceeds pro se in this matter, and although plaintiff has a passable understanding of Connecticut Civil procedure, the plaintiff is not as familiar with the customary formalities or informalities that may or may not exist in this Federal forum. But, in State Court, ex parte letters of this sort, even when copied to all counsel of record, are still considered just that-

1

ex parte communications, proscribed by the Rules of Procedure and Rules of Conduct.

The above notwithstanding, the charge of this Court was that a Memorandum of Law <u>shall</u> be filed by all parties by April 1, 2005. Here, the City states: "<u>The City does not intend to file a separate Memo of Law</u>". Upon research, plaintiff has not been able to uncover any authority which would legitimize the issuance of letter to the Presiding Judge in lieu of the required Memorandum of Law -or a properly filed exigent motion relieving the City of this requirement- under either <u>Federal Civil Judicial Procedure and Rules</u> or the <u>Local Rules of Civil Procedure</u>.

With all due respect, the filing of a Memorandum was not discretionary- it was mandated by the Court's Order. The City's retroactive attempt to adopt Aquarion's Memorandum by letter to the Presiding Judge, in plaintiff's view, is not in compliance with the Court's Order.

## THE REAL ISSUE: THE DEFENDANTS' GRATUITOUS CONDUCT

Respectfully, for whatever its value, the plaintiff's real concern about the City's letter is that it precisely reflects the gratuitous and cynical approach that all three (3) Defendants have employed not solely in this litigation- but more specifically, in the original violation and detention of plaintiff's property. Defendants may argue otherwise, but it is well apparent to plaintiff that Defendants do not feel constrained by any law, rule, procedure or claim of due process whether it is in the form of compliance with a Court Order, or in the form of a violation of a citizens' constitutional rights.

Obviously, the pro se plaintiff litigates against powerful entities. Certainly, the disparity in power finds the plaintiff mismatched- but neither the mismatch nor the disparity are of any moment to the plaintiff. The plaintiff genuinely believes in the Ideal of the primacy of rule of law; and that it is the citizen's duty to confront those in power, who would abuse their Office, by

wrongfully relegating the law to a subservient position relative to their Office; and thereby, perceiving themselves as the embodiment of law.

In holding this view, the plaintiff does not whimsically assume the role of Cervantes' Don Quixote, to be the object of ridicule in fighting for illusionary Ideals. The plaintiff did not ask the Defendants to abuse a citizens' constructional rights- and thereby, plaintiff did not pick this fight, nor does the lightweight plaintiff relish confronting heavyweight opponents. But, regrettably, to the plaintiff, this is not a matter of choice- it's a matter of Duty. Despite any cynicism from whatever quarter, too many have given their lives, -and still currently give their lives- fighting for the rule of law. Plaintiff will not forsake their sacrifice merely because he must oppose formidable entities.

The plaintiff's State eminent domain case as to the subject easement (CV 99-0170518) was heard to the Honorable Robert Callahan, former Chief Justice of the Connecticut Supreme Court.[1] The plaintiff filed an appeal as to the Court's decision, respectfully arguing that the Court misinterpreted three (3) issues of law (AC24780)[2]. In his Brief to the Appellate Court, plaintiff wrote:

> The plaintiff has proceeded pro se, throughout- the Trial Court in this case was former Chief Justice of the Connecticut Supreme Court, the Honorable Robert Callahan. Thus, the polar extremes of the Social Compact are before the Appellate Court. However, the federal and state constitution, as well as the laws of this State, form the continuum that connect these extremes in the preservation of a social order; and as such, both have a common, equal and vital duty to

---

[1] Contrary to the arguments of the defendant's City and Aquarion, the fire hydrant was not evaluated in the action on the condemnation proceedings. This fact was supported by the DOT's Brief as to the current issue before this Court, and likewise supported at the condemnation hearing. Relevant portions of the trial transcript are appended hereto as Exhibit A.

[2] The Appellate Court heard the issue on March 31, 2005. The panel consisted of Chief Judge Lavery, 2nd Senior Judge Schaller, and former Chief Justice Peters. This Senior Panel questioned the plaintiff for his full twenty minute argument period, thus, apparently, the Court felt the legal issues raised worthy of such examination.

sustain the structural integrity of that continuum one to the other. In appealing this matter, the pro se plaintiff honors his end of the bargain.

In this Federal action, in complaining that the Defendants have violated a citizens' foundational constitutional rights, the plaintiff has been placed in a position where he must again uphold his end of the bargain. It is the Tribute one gladly pays to live in this land of law.

In this regard, in this litigation, the Defendants proceed on a foundational gross misrepresentation: i.e. that Aquarion unilaterally installed the fire hydrant on plaintiff's property without the knowledge or consent of either the City or the State. The Defendants would have this Court find as credible the testimony of a mid level Aquarion employee who testified in Court that he, and he alone, decided to install the fire hydrant on plaintiff's private property; without the knowledge, permission or awareness of any of his supervisors, the Stamford Fire Department, and the City and State project managers who were on sight, daily, monitoring the progress of the Grove Street Widening Project. Beyond this, it is the further contention of the Defendants that no one but this sole employee, over the course of the 2 year span of the Project, recognized this large yellow hydrant incongruously installed on grass on private property and not in its designated spot on the public sidewalk in conformity with the Project maps and plans that detailed the Project. With all due respect, this explanation defies reason, and strongly suggests collusion.

Here, the City's letter at issue, represents the latest in a series of gratuitous and cynical legal tactics employed by the Defendants. This case was initiated in January 2003, whereupon, the Defendants moved the Hon. Judge Goettal for a stay; which stay was granted for the limited purpose of settlement talks before the Hon. Judge Garfinkel. Judge Garfinkel then ordered Aquarion to conduct periodic telephonic conferences between the parties for settlement purposes; none occurred. The City refused to respond to plaintiff's e-mails or telephone messages in

plaintiff's good faith effort to comply with Judge Garfinkel's request that a settlement be reached.

Ultimately, where it became apparent that settlement "discussions" were non-productive, the stay was lifted- after which ensued the following gratuitous tactics:

1) Aquarion's Request for Dismissal or Stay of the **entire** Complaint based on a prior pending action, where it had no standing to seek such relief;   (2)The City's Adoption of Aquarion's Motion, though it lacked standing since it was no longer a party to the State action; (3) DOT's adoption of the Aquarion Memorandum as to the current issue before the Court, while contemporaneously, disclaiming the central argument in Aquarion's Memorandum; (4) The DOT'S gratuitous request in its Memorandum, that the Court dismiss Counts One and Five against the DOT, although the DOT has answered the Complaint and has not filed a Motion to Dismiss in connection with its request; (5) The City's gratuitous request in its letter that this Court dismiss the Counts against the City, although this Court has already denied such relief.

The plaintiff would feel far less aggrieved if the Defendants merely filed a Motion to say precisely what they mean: the case should be dismissed because a citizen plaintiff has no constitutional rights as against the combined forces of the State, City and Aquarion because these entities claim exemption from law, due process and litigation procedure.

The Defendants action in depriving plaintiff of his property rights was the initial wrong; their subsequent abusive conduct in this litigation is the second wrong. The plaintiff will continue to resist such conduct to the limits of his ability and wits. Referencing Black, the maxim is "Melius est omnia mala pati quam malo consentire"- It is better to suffer every wrong than to consent to wrong.

5

THE COURT: The point of this, I assume, is that you feel that the fire hydrant detracts from the value of the property?

MR. LAROBINA: Your honor, the point that I want to establish here, your honor, is both the state and the city have disclaimed any responsibility for that fire hydrant. And therefore we are not making a claim for it in this case, your honor, because the city and the state have said that it was not their responsibility and it wasn't part of the Grove Street project. And therefore, your honor, I want to establish that for the court because we are not asking for any damages since they say that it was put there by inadvertence by a third party.

THE COURT: What is the purpose of this? It doesn't affect value. What is the purpose?

MR. LAROBINA: In order for him, in order for the city to explain to the court that they didn't put it there, your honor. Because then no - - who put it there. If it is left out there and we don't know who in fact put it there, then it could be a matter of damages. But I can't make it a matter of damages when I have representations from the city and representations

EXHIBIT "A"

from the state under oath that they didn't put it there. I can't really ask them for damages.

MR. GRAHAM: You will see in the transcript, your honor, there is also testimony from an employee of the water company, Aquarion, testifying to the fact that that particular person authorized the moving of the fire hydrant onto the subject property. That came out in the hearing.

THE COURT: Who was the particular person an agent of?

MR. GRAHAM: Of the water company.

THE COURT: Okay.

MR. GRAHAM: And that is why the city and -- that is why the Commissioner and the city have stated that they were not responsible for its movement onto the plaintiff's property.

THE COURT: Okay.

MR. GRAHAM: And that is a separate court case, your honor.

THE COURT: That transcript will indicate that the fire hydrant is there via Aquarion, right?

MR. GRAHAM: Yes. I believe there is testimony in there from an employee from Aquarion that specifically states that.

>MR. LAROBINA: And that is what I am trying to establish, your honor, so that your honor would understand why we didn't ask for damages.
>
>THE COURT: Okay.
>
>MR. LAROBINA: And it won't take me long, your honor. I only have another - -
>
>THE COURT: That's fine.

Q  Now do you still maintain the city did not authorize the placement of that fire hydrant?

A  The city did not authorize Aquarion to place the fire hydrant within that easement, correct.

Q  Okay. And in your designs none of the drafts placed the fire hydrant in that location, is that correct?

A  Correct.

Q  That's correct. Is it your understanding that Aquarion moved the fire hydrant? Did they tell you that they moved the fire hydrant?

A  I believe there was a discussion regarding that, and it may be part of the previous hearing. I'm not sure.

Q  Let me ask you if you remember this part of the transcript. This was to the Aquarion representative. If you remember this.

>"Question: So is it your understanding at the present that Aquarion Water Company, formerly known as Bridgeport Hydraulic, I don't know when the name changed with respect to the performance of this job, but if I use

Respectfully Submitted,
Plaintiff, Pro Se

*[signature]*

Vincent P. Larobina
113 Grove Street
Stamford, Connecticut 06901
Tel:   203-325-2004
Fax:   203-325-0066
E-Mail Box: vin-pro-se@snet.net

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, first class, on even date herewith, to the following counsel of record:

Attorney Joseph Hammer (Aquarion Water Company)Day, Berry and Howard, 1 City Place
Hartford, Connecticut 06103, TEL: 860-275-0100, FAX: 860-275-0343

Attorney James Minor (City of Stamford), Office of Legal Affairs, City of Stamford, 888 Washington Boulevard, Stamford, Connecticut 06904, TEL: 203-977-4087, FAX: 203-977-5560

Attorney Andrew Graham ( Commissioner of Transportation), Office of Attorney General 55 Elm Street, Hartford, Connecticut 06106, TEL: 860-808-5114, FAX: 860-808-5090

*[signature]*

Vincent P. Larobina