# EXHIBIT A



DOCKET #CV 02-0192666                          SUPERIOR COURT

VINCENT P. LAROBINA

V.                                             J.D. OF STAMFORD NORWALK

COMMISSIONER OF TRANSPORTATION
STATE OF CONNECTICUT;                          AT STAMFORD

AQUARION WATER COMPANY: and

CITY ENGINEER, CITY OF STAMFORD                FEBRUARY 26, 2004

*******************************************************

## REVISED AMENDED COMPLAINT

1.      The plaintiff, Vincent P. Larobina, at all times herein mentioned has been the owner of a certain tract of land situated at 111-113 Grove Street in the city of Stamford, with a multi family house occupied in part by the plaintiff and other improvements thereon.

2.      Defendant, Aquarion Water Company, f/k/a the Bridgeport Hydraulic Company, ("Aquarion") is a public utility licensed to provide water services in Connecticut with its corporate headquarters located at 837 Main Street in the City of Bridgeport, Connecticut.

3.      The subject property is bounded and described as "All that certain tract, or parcel of land, with the buildings thereon, situated in the City of Stamford, known as 111-113 Grove Street, and bounded northerly 183 feet, more or less, by land now or formerly of Minnie A. wood, southerly 188 fee, more or less, by land now or formerly of Samuel Silverman, and westerly 54 feet, more or less, by Grove Street. Together with all right, title and interest in and to the said Highland Road and Grove Street to the center lines hereof, as recorded in a Warranty Deed dated March 13, 1981, **Volume 2016 at Page 334 of the** Stamford Land Records.

1

4.    On or about February 17, 1999, the Commissioner OF Transportation filed with the Clerk of the Superior Court at Stamford a pleading captioned **Notice of Condemnation and Assessment of Damages,** which pleading is an assessment of damages and benefits made by him pursuant to the provisions of **Connecticut General Statutes §§13a-73(b) and 13a-98e** purportedly authorizing him to do so, wherein the Commissioner found a portion of the plaintiff's premises hereinafter described necessary for the layout, alteration, extension, widening, change of grade or improvement of the highway commonly known as Grove Street in Stamford, Connecticut (the "Grove Street Project") and acquired the same as an easement.

5.    The easement is more particularly described at Vol 5203 p.50 of the Stamford Land Records and reads in significant part:

> "A full and perpetual easement to construct sidewalk within an area of 269 square feet, located between and opposite Stations 19+19.65.88 right BASE LINE, present Grove Street, as shown on said map."

6.    The area within the easement, in less technical terms, consists of the frontage of the plaintiff's property, which area is landscaped and bordered by a white picket fence.

7.    At some point, during the construction period of the Grove Street Project, a fire hydrant was installed centrally within plaintiff's property, on plaintiff's front lawn and proximate to plaintiff's fence within the easement. As of the completion date of the Grove Street Project, on or about October 1, 2000, the hydrant remained positioned on plaintiff's lawn.

8.    _On information and belief, Aquarion installed the fire hydrant within the easement without plaintiff's consent._

9.    As of even date, though due demand has been made, Aquarion has deliberately and wilfully refused to remove the hydrant. Such refusal is calculated

and intentional, and manifests a reckless indifference to the plaintiff's property rights as well as an indifference to the plaintiff's exposure to danger and liability from the presence of a public fire hydrant wrongfully placed on private property.

10.    Aquarion's entry and intrusion on plaintiff's property, and continued presence thereon in the form of the fire hydrant, is an act of trespass from which the plaintiff claims damages.

## COUNT TWO

1-9.    Paragraphs 1-9 of Count One are restated here.

10.    Aquarion's unauthorized taking and/or use of plaintiff's land constitutes a civil theft in violation of Connecticut General Statutes §§52-564 and 53a-119, from which plaintiff has suffered damages.

## COUNT THREE

1-9.    Paragraphs 1-9 of Count One are restated here.

10.    As a public utility, Aquarion has a duty to the plaintiff not to enter on to plaintiff's property for the purpose of maintaining and/or upgrading its facilities or otherwise, without first obtaining the plaintiff's permission; a duty not to install or erect any public and/or private fixture of any kind on plaintiff's property without plaintiff's prior consent; and, a duty to responsibly hire, educate, train and supervise its employees in order that they do not breach Aquarion's duties due the plaintiff.

11.    During the course of upgrading and maintaining its facilities, Aquarion breached its duties aforesaid, by entering onto plaintiff's property and installing the fire hydrant thereon without plaintiff's consent.

12.    During the course of upgrading and maintaining its facilities, Aquarion further

3

breached its duty by empowering a lowered level employee, Mr. Fritz Jacques, to unilaterally authorize the placement of a fire hydrant on plaintiff's property based on his interpretation of street maps and prevailing easements; though Aquarion never required Mr. Jacques to have any education in the field of engineering, surveying and/or law by which to assess such maps; nor did Aquarion require that Mr. Jacques seek professional assistance from an engineer, surveyor, lawyer and/or his supervisor to aid him in interpreting such street maps and easements.

13.     During the course of upgrading and maintaining its facilities, prior to authorizing the installation of the hydrant on plaintiff's property, Mr. Jacques (1) failed to search the Stamford Land Records in order to make a professional and complete assessment as to whether or not the proposed fire hydrant installation site was on public or private property; (2)  failed to consult the office of the Commissioner of Transportation; (3) failed to consult City of Stamford officials; (4) failed to seek advice from his immediate superior at Aquarion; (5) failed to contact the plaintiff for permission to enter upon his property; (6) and failed to properly and professionally interpret the site maps upon which he relied in authorizing the installation of the hydrant.

14.     By its actions aforesaid, Aquarion breached duties owed the plaintiff, which breach caused the wrongful installation of a fire hydrant on plaintiff's property, and its continued wrongful presence thereon. As a consequence of Aquarion's negligent conduct, the plaintiff has been damaged.

**COUNT FOUR**

1-13.     Paragraphs 1-13 of Count Three are restated here.

14.     Subsequent to the installation of the fire hydrant, officials from the City of Stamford and the Office of the Commissioner of Transportation issued formal

declaratory documents indicating that the hydrant was wrongfully positioned on plaintiff's property, and said positioning had not been authorized by the Commissioner or the City. Despite said declarations, Aquarion continues to refuse to remove the hydrant from plaintiff's property. **(EXHIBITS A and B)**

15.    By leaving the hydrant in place, Aquarion has caused plaintiff emotional distress and creates an unreasonable risk of causing the plaintiff further physical and emotional duress. Aquarion can foresee, or should be able to foresee, that its wrongful infringement of plaintiff's property rights occasioned by this wrongful occupation will only exacerbate the plaintiff's distress and duress; and that this emotional distress is of such a nature that it can lead to illness and bodily harm.

16.    Aquarion's intrusion on private property and its continued occupation thereon, achieved by force and superior might, has rendered the plaintiff powerless to secure and enjoy his constitutionally protected property rights. By its actions, Aquarion has caused plaintiff considerable anguish as well as psychological, emotional and physical duress.

17.    Aquarion's conduct as cited above constitutes a negligent infliction of emotional distress, from which plaintiff claims damages.

## COUNT FIVE

1-2.    Paragraphs 1 and 2 of Count Four are restated here.

3.    Aquarion is engaged in a trade, business and/or commerce as defined in the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a(3) and §42-110a(4), ("CUTPA").

4-16.  Paragraphs 4-16 of Count Four are restated here.

17.    As a consequence of its actions aforesaid, as well as its violation of C.G.S. §52-564 and §53a-119, Aquarion has conducted its trade in an unfair, unscrupulous, unprofessional and unlawful manner, from which the plaintiff has suffered an ascertainable loss of the use of the effected portion of his property, loss of the quiet enjoyment of the remainder, the loss of the esthetics of plaintiff's fence and landscaping, the loss of his right to privacy and property rights as well as the monetary equivalent thereof.

14.    As a result of Aquarion's CUTPA violation, plaintiff has been damaged.

**COUNT SIX**

1.    Paragraph 1 of Count One is restated here.

2.    Defendant, Yankee Gas Company, is a public utility licensed to provide gas services in Connecticut with its corporate headquarters located at 107 Selden Street Berlin, Connecticut.

3-6    Paragraphs 3-6 of Count One are restated here.

7.    At some point, during the construction period of the Grove Street Project, Yankee Gas installed a gas cap centrally within plaintiff's property, on plaintiff's front lawn  and proximate to plaintiff's fence within the easement.  As of the completion date of the Grove Street Project, on or about October 1, 2000, and of even date, the gas cap remains positioned on plaintiff's lawn.

8.    The presence of the gas cap on the front-most portion of plaintiff's lawn not

6

only constitutes an unlawful use of plaintiff's property, but concealed in the lawn as it is, the gas cap represents a danger and liability to anyone not aware of its presence.

9.    The entry and intrusion on plaintiff's property by Yankee Gas, and continued presence thereon in the form of the gas cap, is an act of trespass from which the plaintiff claims damages.

## COUNT SEVEN

1-8.    Paragraphs 1-8 of Count Six are restated here.

9.    This unauthorized taking and/or use of plaintiff's land by Yankee Gas constitutes a civil theft in violation of Connecticut General Statutes §§52-564 and 53a-119, from which plaintiff has suffered damages.

## COUNT EIGHT

1-8.    Paragraphs 1-8 of Count Seven are restated here.

9.    Yankee Gas benefits from the placement of the gas cap within plaintiff's front lawn at the expense of the plaintiff.

10..    Yankee Gas did not seek plaintiff's permission for the use of his land, nor has Yankee Gas compensated plaintiff for such unauthorized use.

11.    By its actions aforesaid, Yankee Gas is unjustly enriched by the unauthorized usage of plaintiff's property, from which the plaintiff claims damages.

7

## COUNT NINE

1-2.    Paragraphs 1 and 2 of Count Eight are restated here.

3.    Yankee Gas is engaged in a trade, business and/or commerce as defined in the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110a(3) and §42-110a(4), ("CUTPA").

4-10.    Paragraphs 4-10 of Count Eight are restated here.

11.    As a consequence of its actions aforesaid, as well as its violation of C.G.S. §52-564 and §53a-119, Yankee Gas has conducted its trade in an unfair, unscrupulous, unprofessional and unlawful manner, from which the plaintiff has suffered an ascertainable loss of the use of the effected portion of his property, loss of the quiet enjoyment of the remainder, the loss of the esthetics of plaintiff's fence and landscaping, the loss of his right to privacy and property rights as well as the monetary equivalent thereof.

12.    As a result of this CUTPA violation by Yankee Gas, plaintiff has been damaged.

8

**WHEREFORE,** the plaintiff claims

## AS TO All COUNTS

1.    Actual damages for plaintiff's loss of use of his property;.

2.    Compensatory damages for the intentional violation of plaintiff's property rights; and, plaintiff's exposure to danger, harm, liability, nuisance and inconvenience;

3.    General damages in the form of plaintiff's emotional and physical duress attendant to the continued presence on plaintiff's property, and the consequences thereof;

4.    Statutory interest,

5.    Costs;

6.    Punitive damages

7,    Any and all other relief which in equity may appertain.


## AS TO COUNTS ONE THROUGH FIVE

1.    An order requiring the removal of the fire hydrant.

## AS TO COUNTS SIX THROUGH NINE

1.    An order requiring the removal of the gas cap.

## AS TO COUNTS TWO AND SEVEN

1.    Treble damages pursuant to Conn. Gen. Stat. §52-564


The Plaintiff, Pro Se

Vincent P. Larobina
113 Grove Street
Stamford, Conn. 06901
Tel: 203-325-2004



MAYOR
**DANNEL P. MALLOY**

ACTING
DIRECTOR OF LEGAL AFFAIRS
AND CORPORATION COUNSEL
THOMAS M. CASSONE

DEPUTY CORPORATION COUNSEL
SYBIL V. RICHARDS

ASSISTANT CORPORATION COUNSEL
JAMES V. MINOR
JOHN W. MULLIN, JR.
KENNETH B. POVODATOR
BURT ROSENBERG
MICHAEL S. TOMA

**CITY OF STAMFORD**
**OFFICE OF LEGAL AFFAIRS**

888 WASHINGTON BOULEVARD
P.O. BOX 10152
STAMFORD, CT 06904-2152
(203) 977-4021
FAX (203) 977-5560

November 26, 2002

John P. Randazzo
Division Chief
Acquisition/Relocation
Office of Rights of Way
Department of Transportation
2800 Berlin Turnpike, P.O. Box 317546
Newington, CT 06131-7546

Re: 113 Grove Street, Stamford, Connecticut

Dear Mr. Randazzo :

The City of Stamford Engineering Department has made me aware that a fire hydrant has been located on private property at the above address without the property owner's consent. My understanding is that Bridgeport Hydraulic intends to move the hydrant off the private property once it receives from the State Department of Transportation confirmation of the proper placement. The purpose of this letter is to formally request that State DOT communicate to Bridgeport Hydraulic the proper location for the hydrant so that it may be moved without undue delay. The property owner has been in contact with the City and has voiced concerns over liability in the event of injury involving the hydrant.

Sincerely,

Michael S. Toma
Assistant Corporation Counsel

"A"

**DEPARTMENT OF TRANSPORTATION**

111-113 ___ve Street
Stamford

**m e m o r a n d u m**              date:        October 23, 2002

to:  Mr. Carl F. Bard                from:   John P. Randazzo         ext. 2380
     Manager of Consultant Design            Division Chief
     Office of Engineering                   Acquisition/Relocation
                                             Office of Rights of Way

The Commissioner of Transportation was recently served with the attached complaint. In connection with the City's project to reconstruct Grove Street, the State acquired an easement to construct a sidewalk along the length of the subject property in February of 1999. According to the Plaintiff, Vincent P. Larobina, the Commissioner misused and over-burdened the easement by positioning a fire hydrant within the limits of the condemned easement area.

The attached photographs, which were taken on October 18, 2002, show a fire hydrant positioned between Mr. Larobina's white-picket fence and the new sidewalk. This office has recently confirmed that the City of Stamford does not enjoy a defined easement for highway purposes along this parcel's frontage, and that a fire hydrant would not be considered appurtenant to a sidewalk easement.

In consideration of this pending litigation, and unless the City is prepared to remove this fire hydrant, this office suggests the following:

- The City's consultant, Redniss & Mead, should be instructed to prepare a map showing a defined easement being acquired across the front of the subject property. The actual dimensions should mirror the sidewalk easement depicted on the mapping for Serial No. 17.

- Once this mapping is prepared, this office will expedite the rights of way appraisal and negotiations process in coordination with the Office of the Attorney General.

If you or your staff have any questions regarding this matter, please contact Mr. Robert Ike directly. He can be reached at extension 2444.

Attachments

John P. Randazzo/yr
cc:  Brian J. Comerford, Assistant Attorney General
     Drew Graham, Assistant Attorney General
     Walter H. Coughlin
     Michael W. Lonergan
     Sebastian J. Sbalcio
     James E. Lewis
     Richard C. Allen – Robert Ike
     John P. Randazzo

FROM THE DESK OF
SEBASTIAN J. SBALCIO

OCT 2 3 2002

"B"

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, first class, on even date herewith, to the following counsel of record:


Attorney Joseph Hammer (Aquarion Water Company)
Day, Berry and Howard
1 City Place
Hartford, Connecticut 06103


Attorney Mark Ostrowski (Yankee Gas Co.)
BY Fax- 860251-5700


_____
        Vincent P. Larobina

10